**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

STEVEN R. YOUNG                 *

      Plaintiff,               *

      v.                      *           Civil Action No. 8:18-cv-002054-PX

MONTGOMERY COUNTY, MARYLAND    *

      Defendant.           *

******

<u>**MEMORANDUM OPINION**</u>

Now pending in this employment discrimination case is Defendant Montgomery County, Maryland ("the County")'s motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. ECF No. 4. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court GRANTS in part and DENIES in part the County's motion to dismiss.

## I.     Background[1]

On or about January 16, 2001, Plaintiff Steven Young, a black male, was hired as a correctional officer for Montgomery County. ECF No. 1 ¶ 7. Since 2004, he has worked at the Montgomery County Correctional Facility ("MCCF") located in Boyds, Maryland. *Id.* Young's duties include supervising those detained at MCCF. *Id.* ¶ 8. Young is not a member of the Emergency Response Team, who receive specific training and certification on responding to disruptive or violent inmates. *Id.* Throughout his nearly two decades of employment with the County, Young has received only two reprimands. *Id.* ¶ 10. Young and other black officers

---

[1] The following facts are taken from Young's Complaint, unless otherwise noted. In considering the motion to dismiss, the Court accepts Young's well-pleaded allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

consistently receive "meets standards" ratings on annual employee performance evaluations. *Id.* However, white correctional officers with a similar level of experience received "above expectations" ratings for a similar level of work performed. *Id.*

Pursuant to MCCF policy and procedure, posts are assigned daily at the beginning of each shift. *Id.* ¶ 11. The facility does not assign officers to "permanent" posts. *Id.* Nevertheless, for the last ten years, Young has been routinely assigned to work the Male Segregation Unit (approximately 200 to 300 times), whereas his female or white counterparts are almost never assigned to that unit. *Id.* ¶ 11–12. The Male Segregation Unit is a demanding assignment because officers must supervise the most "disruptive and violent inmates." *Id.* ¶ 12. These inmates routinely bang on the doors and walls, flood cells with toilet water, and "throw fecal matter, urine and spit at officers assigned to the unit." *Id.* Young avers that the Male Segregation Unit presents particular hazards to "an officer's physical, mental, or emotional health." *Id.*

On June 13, 2016, Young was assigned to work the W.1.H. Escort Relief Officer post—a low risk area. *Id.* ¶ 14. Later during the shift, Young's supervisor, Lieutenant P. Beam (a white male), reassigned Young to the Male Segregation Unit while moving Corporal Zelbo (a white male) to Young's low risk post. *Id.* This reassignment caused Young to become "physically and emotionally ill"; he developed a severe migraine headache and had to use 3.5 hours of sick leave to receive medical treatment. *Id.*

On July 18, 2016, Young filed a formal Charge of Discrimination with the Montgomery County, Maryland Office of Human Rights ("formal Charge" or "Charge"), alleging race discrimination arising from his routine placement in the segregation unit. *Id.* ¶ 5. Young described in the Charge the facts regarding the June 13, 2016 reassignment and also checked a

box noting a "continuing action." ECF No. 8-1 at 1. Young supplemented the Charge with two letters: one dated July 13, 2016, which described a pattern of unfavorable treatment towards black officers, and one dated July 31, 2016, which purported to add a charge of gender discrimination. *Id.* at 3–8. The County did not respond to these "additional charges," (ECF No. 8-3), and appears to have never received either supplemental letter. ECF No. 9-1 ¶ 4.

The Office of Human Rights forwarded the Charges to the U.S. Equal Employment Opportunity Commission ("EEOC") for investigation. *Id.* ¶ 5. On March 29, 2018, the EEOC concluded its investigation and issued a Dismissal and Notice of Rights letter. ECF No. 1-1. In its letter, the EEOC acknowledged that it reviewed the additional information provided by Young, along with the original information provided by both Young and the County. *Id.*

On July 6, 2018, Plaintiff filed this suit against the County, alleging one count of race discrimination and one count of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ECF No. 1. The County's motion to dismiss followed. ECF No. 4.

## II. Discussion

### a. Exhaustion of Claims

### i. Standard of Review

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies challenge a court's authority to hear a matter. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300–01 (4th Cir.2009); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). If "a claim fails to allege facts upon which the

court may base jurisdiction," the court must dismiss the action for lack of subject matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799.

In determining whether jurisdiction exists, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotation marks omitted). Where the defendant contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based," the Court construes the facts alleged in the complaint as true and most favorable to the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

### ii.    Analysis

The County argues that the Court lacks subject matter jurisdiction over the gender discrimination claim and additional allegations of race discrimination because Young failed to exhaust administrative remedies. ECF No. 4. Before a plaintiff may pursue discrimination claims in federal court, he must file a formal charge with the EEOC or appropriate local agency. *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2002) (citing 42 U.S.C. § 2000e–16(c); *Brown v. General Serv. Admin.*, 425 U.S. 820, 832 (1976). Failure to first file with the EEOC "deprives the federal courts of subject matter jurisdiction over the claim." *Kim v. Potter*, No. DKC 09-2973, 2010 WL 2253656, at *4 (D. Md. June 2, 2010).

The plaintiff's federal claims are circumscribed by the initial Charge. *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009); *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 716 (D. Md. 2013). Only those claims "reasonably related" to the Charge and flowing "from a reasonable administrative investigation," are preserved for federal adjudication. *Sydnor v. Fairfax Cty.*, Va., 681 F.3d 591, 594 (4th Cir. 2012). "The touchstone for exhaustion is whether

plaintiff's administrative and judicial claims are 'reasonably related,' . . . not precisely the same." *Id*. at 595 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

Where the plaintiff asserts in the Charge one basis for the claimed discrimination, such as race or gender, then asserts a new basis for discrimination in his federal case, the new claim has not been exhausted and cannot proceed. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (holding that plaintiff failed to exhaust claim for sex discrimination because EEOC charge alleged only racial discrimination). This is so because advancing a wholly new theory of recovery in federal court "would eviscerate the administrative charge filing requirement altogether," thereby "depriving the employer of adequate notice" and a reasonable opportunity to investigate the claim. *Evans v. Technologies Application & Serv. Company*, 80 F.3d 954, 963 (4th Cir. 1996) (quoting *Conroy v. Boston Edison Co.*, 758 F. Supp. 54, 59–60 (D. Mass. 1991)) (internal quotation marks omitted).

The County contends that Young did not exhaust his gender discrimination claim because he failed to raise it in his formal Charge before the EEOC. ECF No. 4 at 10–13. Young concedes that he did not allege gender discrimination in his EEOC Charge, but asserts that a letter he penned to the EEOC sufficed to amend the Charge. ECF No. 8 at 4. Specifically, Young contends that the EEOC advised him that he could amend his formal Charge by filing a written statement. *Id*. Young accordingly contends that his "To Whom It May Concern Letter" sent to the EEOC, which references gender discrimination, satisfies the exhaustion requirement. The Court must disagree.

The Court begins by recognizing that the exhaustion inquiry focuses, as it must, on the formal Charge. Young's Charge does not, in any way, put the County on notice that the asserted adverse conduct involved gender discrimination. *See Sloop v. Memorial Mission Hosp., Inc.*,

198 F.3d 147, 149 (4th Cir.1999) ("Even if [the plaintiff] had subjectively believed she had amended her charge by sending the letter, it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it."). Accordingly, the EEOC Charge does not preserve the claim.

Young's additional correspondence does not, as a matter of law, amend the formal Charge. "The Fourth Circuit . . . has adopted a rigid rule that letters, emails, and other submissions cannot be deemed to have effected an amendment of the Charge; only inclusion of additional allegations on the face of the Charge form will count." *See Maddox-Nichols v. S. Maryland Hosp., Inc.*, TDC–14–0243, 2014 WL 6609313, at *5 (D. Md. Nov. 19, 2014) (citing *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401 (4th Cir.2013)); *see also Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (holding that a letter referencing a retaliation claim that the plaintiff sent to the EEOC five months after filing her Charge did not cure the plaintiff's failure to allege retaliation in the Charge itself for purposes of administrative exhaustion.). Young's letter, therefore, cannot expand the universe of exhausted discrimination claims. Count II of the Complaint must be dismissed for lack of subject matter jurisdiction.

The County also argues that Young's race discrimination claim premised on his repeated assignment to the Male Segregation Unit exceeds the scope of his Charge and is likewise unexhausted. ECF No. 9 at 6. Young included in the Charge a single unfavorable assignment to this unit that occurred in June of 2016. In the Complaint, however, Young avers that his continued assignment to this Unit "approximately 200 to 300 times" constitutes an adverse

employment action supporting his race discrimination claim.  *Compare* ECF No. 8-1 at 1, *with* ECF No. 1 ¶ 11.

The Court finds that the federal allegations are "reasonably related" to the EEOC Charge such that the County was on notice of Young's discrimination claim.  *See Smith*, 202 F.3d at 247.  This is so because Young checked the box identifying this claim as a "continuing action."  ECF No. 8-1 at 1.  The County, therefore, was on notice that Young's race discrimination claims extended beyond the single incident described in his narrative.  Additionally, the Charge referenced the identical assignment on which his Complaint allegations center, varying only in degree and length, but not in substance.  *Sydnor*, 681 F.3d at 595.  Given the similarities between the Charge and the Complaint allegations, the agency investigation could have reasonably developed information concerning the ongoing pattern of treatment as alleged in the Complaint.  *See Stewart v. Iancu*, 912 F.3d 693, 706 (4th Cir. 2019).  Young has exhausted administrative remedies on the race discrimination claim.  The County's motion to dismiss for lack of jurisdiction as to Count I is denied.

### b.      Legal Sufficiency of Young's Race Discrimination Claim

### i.      Standard of Review

Alternatively, the County urges dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  A 12(b)(6) motion tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A Complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citations omitted).  The Complaint must provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Twombly*, 550 U.S. at 555–56.

At this stage, all well-pleaded factual allegations are taken as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *See Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Ultimately, a complaint must "permit the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense."  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### ii.     Analysis

Young brings his race discrimination claim pursuant to Title VII, 42 U.S.C. § 2000e-2(a), which prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  *Coleman*, 626 F.3d at 190.  To establish a *prima facie* showing of race discrimination, plaintiff must aver plausibly that he (1) is a member of a protected class, (2) performed his job duties in a satisfactory manner, (3) suffered an adverse employment action, and (4) was treated differently than other similarly situated employees outside his protected class.  *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016).  Importantly, a plaintiff survives challenge at the motion to dismiss stage where he pleads "sufficient factual allegations to support a plausible claim" that he suffered an adverse employment action motivated by bias or discrimination.  *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also Chang Lim v. Azar*,

310 F. Supp. 3d 588, 601 (D. Md. 2018) ("[The plaintiff] does not need to allege facts sufficient to establish a *prima facie* case under Title VII on a motion to dismiss . . . .").

The County challenges the sufficiency of Young's claim only as to whether his assignment to the Male Segregation Unit amounts to an adverse employment action. ECF No. 4-1 at 8–10. "An adverse employment action" constitutes any "act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). "[D]ischarge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" squarely fall within the definition of adverse employment action. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Moreover, although reassignment of job function may constitute an adverse employment action, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761–62, "[a]bsent evidence that a new position is significantly more stressful than the last, vague allegations of stress resulting from reassignment cannot support a claim of discrimination under Title VII." *Boone*, 178 F.3d at 256. At bottom, the plaintiff must aver plausibly that the reassignment visited "some significant detrimental effect on" the employee. *Id.*

Taking all well-pleaded allegations in the Complaint as true, Young has sufficiently pleaded an adverse employment action. Young specifically avers that black officers were more frequently assigned to the Male Segregation Unit, which presented significantly greater risk to the officer's physical health, safety, and wellbeing. Detainees in that unit regularly "throw fecal matter, urine and spit at the officers assigned to the unit." ECF No. 1 ¶ 12. Detainees in the unit are also more prone to violence, increasing the risk of physical injury to the guards disproportionately assigned to the unit. Subjecting Young to "appreciably more dangerous

conditions" on the basis of his race is—at the very least—a plausible claim of employment discrimination for which discovery should proceed. *See Sherman v. Westinghouse Savannah River Co.*, 263 F. App'x 357, 370 (4th Cir. 2008) (holding that exposing employee to higher levels of radiation may constitute an adverse employment action); *Von Gunten v. Maryland*, 243 F.3d 858, 868–69 (4th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("[W]e agree in principle that increased exposure to dangerous pathogens could adversely effect [sic] the terms, conditions, or benefits of employment . . . .").

The County's reliance on *Jones v. District of Columbia Dep't of Corr.*, 429 F.3d 276 (D.C. Cir. 2005), does not mandate dismissal. *Jones* was decided at the summary judgment stage, after full factual development regarding the plaintiff's retaliation claim. The Court held that *Jones* failed to demonstrate that her assignment to the "tower" constituted an adverse employment action. *Id.* at 281. The Court relied primarily on the fact that Jones was on probationary status, and that she, like all probationary officers, could be assigned one of three "routine" placements, which included working in the tower. *Id.* Accordingly, the Court noted that while the tower was "undesirable" in that it "was cold in the winter, hot in the summer, infested with bugs and had inadequate bathroom facilities," Jones had failed to establish that this assignment was out of the "the ordinary course of her employment, and therefore there was no 'material' change in the 'terms, conditions, or privileges of her employment.'" *Id.* at 281–82 (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). The Court particularly noted that the officer provided no information about the typical duration of assignments to the tower. *Jones*, 429 F.3d at 281.

Unlike *Jones*, Young has averred that he and other African American guards were assigned to the Male Segregation Unit far more frequently than their white counterparts. ECF

No. 1 ¶¶ 11–12.  In this respect, Young's disproportionately greater exposure to the physical hazards inherent in this unit over that of his white coworkers, has not been pleaded as a matter of "routine" assignment.  Put differently, although Young chose to enter an inherently risky profession, *Peary v. Goss*, 365 F. Supp. 2d 713, 724 (E.D. Va. 2005), *aff'd*, 180 F. App'x 476 (4th Cir. 2006), he did not agree to bear a disproportionate risk of physical harm, as compared with his white counterparts, and on account of his race.  *Cf. Bell v. University of Maryland Coll. Park Campus Facilities Mgmt.*, No. PX-17-1655, 2018 WL 3008325, at *9 (D. Md. June 14, 2018) ("Being forced to work in extreme heat and extreme cold or under known unsafe conditions detrimentally affects the terms and conditions of employment.").  The County's motion to dismiss as to Count I must be denied.

### III.   Conclusion

For the foregoing reasons, Defendant Montgomery County, Maryland's motion to dismiss is granted in part and denied in part.  ECF No. 4.  A separate Order follows.


04/15/2019                                                      /S/
Date                                             Paula Xinis
                                                 United States District Judge

11