IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **STEVEN R. YOUNG,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Civil Action No.: CBD-18-2054 |
| | * | |
| **MONTGOMERY COUNTY,** | * | |
| **MARYLAND** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | **\*\*\*\*** | |

## MEMORANDUM OPINION

Before the Court is Defendant Montgomery County Maryland's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 29. The Court has reviewed Defendant's Motion and the applicable law.[1] No hearing is deemed necessary. Local Rule 105.6. For the reasons set forth below, the Court GRANTS Defendant's Motion.

### I.    Factual Background

Plaintiff's claim arises from his current employment as a Correctional Officer[2] with the Montgomery County Department of Correction and Rehabilitation ("DOCR"). Aff. of Shelford Gilliam ("Gilliam Aff.") ¶ 19, ECF No. 29–3. On July 7, 2018, Plaintiff filed the Complaint against Defendant alleging: (1) racial discrimination and (2) gender discrimination in violation of

---

[1] Plaintiff failed to file an opposition to Defendant's Motion despite the Court granting Plaintiff's Verified Consent Motion To Extend The Time To File His Opposition To Defendant's Motion for Summary Judgment. ECF No. 31. Over five months have passed since the agreed upon deadline of March 23, 2020.

[2] Specifically, Plaintiff holds the rank of a Corporal. Dep. of Steven Young ("Young Dep."), 6:12–15, ECF No. 29–5.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Compl. ¶¶ 14–19, 21–25, ECF No. 1. On April 15, 2019, the Honorable Paula Xinis granted in part, and denied in part Defendant's Montgomery County, Maryland's Motion to Dismiss. ECF No. 12. As a result of Judge Xinis' order, Count II of the Complaint for gender discrimination was dismissed. ECF No. 12.

Plaintiff has worked at the Montgomery County Correctional Facility ("MCCF") in Clarksburg, Maryland since January 16, 2001. Young Dep., 8:6–8, ECF No. 29–5. Plaintiff, an African American, alleges that due to his race, he was discriminated against because he was reassigned from a low-risk area to a high risk area while "another similarly situated white officer who is lesser qualified was treated more favorably when moved from a high risk area to a low risk area." EEOC Charge of Discrim. 351, ECF No. 29–4. According to Plaintiff this was done on a continuing basis. *Id.*

Generally, shift assignments are based on seniority and chosen by employees in a bidding process. Gilliam Aff. ¶ 10. Each correctional officer at the rank of sergeant and below are allowed to submit a bid on their preferred shift assignment.[3] *Id.* After the officers submit their preferred assignments, Captains are tasked with selecting each officer for their units.[4] *Id.* These selections are "based on needs for their unit, which include a balance of rank, experience, and special training." *Id.*

Once the Correctional Officers are assigned a unit, on a daily and rotating basis, they are given their shift assignments which may or may not be within their unit to address staffing needs.

---

[3] The work is divided into three shifts (Shifts 1, 2, and 3). Def.'s Mem. in Supp. 2. The hours for the shifts are: Shift 1: 10:30 p.m. to 7:00 a.m.; Shift 2: 6:30 a.m. to 3:00 p.m.; and Shift 3: 2:30 p.m. to 11:00 p.m. *Id.* at 3.

[4] The MCCF is divided into three units (Units 1, 2, and 3). Def.'s Mem. in Supp. 2. Within each unit there are different programs and housing areas. *Id.* at 4.

Gilliam Aff. ¶ 11. The assignments to particular posts for each shift are made based on staffing needs which take into consideration: rank, days off, specialized training, experience in a given post, and overtime relief. *Id*. at ¶ 13. Further:

> It is preferred that those with specialized training be assigned to programs such as [the] Jail Addiction Services ("JAS"), the Crisis Intervention Unit ("CIU"), and [the] Emergency Response Team ("ERT"). However, in the event that no Correctional Officer with specialized training is available to work the post on a particular shift, another Correctional Officer may be assigned.

*Id.* at ¶ 14. All post assignments have the same benefits, hours, and compensation. Young Dep. 62:19–22.

At MCCF, Corporals are responsible for the direct custody, care, and safety to a group of inmates/arrestees. Class Specification 336, ECF No. 29–8. Generally, Corporals maintain order and reduce the risk of escapes, assaults, suicides, and injuries by enforcing rules. *Id.* at 337. Corporals also restrain hostile inmates. *Id.* Certain inmate programs require additional training so that officers may implement specialized procedures and techniques. *Id.* at 337–38. These programs include: the JAS; the CIU; and the ERT. *Id.* In the CIU, inmates are mentally unstable and can have violent outbursts. Young Dep. 42:10–12. In the CIU, specialized training is not required, but preferred. Gilliam Aff. ¶ 14. According to Plaintiff, "when you walk into a correctional facility, it's – once you step through the door, it's very risky. So you always have a level or risk that you're going to experience . . . ." Young Dep. at 39:24–40:2. However, "some housing units house inmates that are more assaultive or disruptive than others." *Id.* at 40:6–8.

Plaintiff considers the Segregation post, the CIU, and the medium/maximum security level male housing units to be high risk posts where inmates may display more negative or problematic behavior. *Id*. at 41:2–3, 42:5–7, 43:1–2, 7–9; Compl. ¶ 12. According to Plaintiff:

3

> The Male Segregation Unit is a very stressful and challenging post assignment. The officers who are assigned to this post, which are mostly black male officers, must supervise the most disruptive and violent inmates in terms of behavior in the MCCF . . . Needless to say, assignment to the Male Segregation Unit is hazardous to an officer's physical, mental and emotional health.

*Id.* Plaintiff believes that because of the behavior of the inmates assigned to the above units, these post assignments should be evenly distributed to all officers. *Id.* at 45:1–11. According to Plaintiff, he has been assigned to the riskier and more stressful posts more often than the white correctional officers because of his race. Def.'s Mem. in Supp. of Mot. 6, ECF No. 29–1.

According to Plaintiff, the discriminatory event took place on June 13, 2016 when Plaintiff's supervisor, Lieutenant Patrick Beam, reassigned Plaintiff to another post.[5] EEOC Charge of Discrim. 351. On weekdays, staff reductions involve cutting three officers from the Inmate Processing Unit (IPU) and Medical Units. Aff. of Patrick Beam ("Beam Aff.") ¶ 7. Of the three, the officers not working overtime are reassigned to other posts to relieve officers working overtime. *Id.* Plaintiff was initially assigned to W.1.H Escort Relief. *Id.* at ¶¶ 3–4. Corporal Andrew Zelbo was assigned to the IPU.[6] *Id.* at ¶ 5. Private Solomon Nwosa was working overtime in the W.1.1. pod. *Id.* at ¶ 8. Lt. Beam moved Plaintiff to the W.1.1 pod in order to relieve Private Nwosa, and Corporal Zelbo was moved to the W.1.H Escort Relief unit because he had specialized ERT training. *Id.* at ¶ 9.[7] The supervising lieutenant has the "discretion to repeatedly assign a correctional officer to a post based on, for example, specialized training, experience, and history of good performance in the post." Gilliam Aff. ¶ 18. As stated,

---

[5] Lieutenant Beam is a white male. EEOC Charge of Discrim. 351.

[6] Corporal Zelbo is a white male. *Id.*

[7] The W.1.1 pod is designated for inmates classified low security. Beam Aff. ¶ 9.

4

Plaintiff alleges that the reassignment from a low risk area to a high-risk area was due to his race. EEOC Charge of Discrim. 351.

In addition to the events that took place on June 13, 2016, Plaintiff claims that multiple persons at MCCF were treated more favorably due to their race. Young Dep. 94:23–95:3. Plaintiff points to Corporal Russel McIntyre, who was regularly assigned to JAS up until he retired. *Id.* at 95:1–18. Plaintiff was also assigned to JAS repeatedly, but not as much as McIntyre. *Id*. at 97:2–4, 18–20. Plaintiff additionally notes that Corporal Robert B. Spickler, II, and Sergeant Charles Ryder were frequently assigned to the CIU throughout the tenure of their employment.[8] Young Dep. 98:14–24, 103:9–16. Even though Plaintiff was not trained for the CIU, he was still assigned to the CIU as needed. *Id.* at 101:10–20.

## II.   Standard of Review

"The court shall grant summary judgement if the movant shows that there is no *genuine* dispute as to *any* material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). On a motion for summary judgment, alleged facts and reasonable inferences are drawn in favor of the nonmoving party. *See United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). A properly supported motion for summary judgment is not undermined by "some alleged factual dispute between the parties . . . ." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 247–48 (1986).

A dispute about a material fact is genuine if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party . . . there is no such issue unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 248.

---

[8] In addition to Corporal McIntyre, Plaintiff contends that Corporal Spickler (white) and Sergeant Ryder (white) were constantly assigned to the same posts and received favorable treatment. Young Dep. 98:14, 103:9–16.

5

Case 8:18-cv-02054-CBD   Document 32   Filed 09/14/20   Page 6 of 13

The judge will not weigh the evidence but shall determine whether there is "a genuine issue for trial." *Id.* at 249. Unless there is sufficient evidence in favor of the nonmoving party to present to a jury, there is no genuine issue for trial. *Id.* The summary judgment standard requires more than a scintilla of evidence, but enough that a jury could find in favor of the moving party. *Id.* at 251. For a motion for summary judgment, the issue is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Therefore, if the Court finds that there is no genuine dispute over any material fact, Defendant will be entitled to judgment as a matter of law. *Id.* at 247.

### III.     Analysis

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). In order for Plaintiff to establish a *prima facie* case of discrimination on the basis of race without direct evidence, he must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *See Luy v. Balt. Police Dep't.*, 326 F. Supp. 2d 682, 689 (D. Md. 2004).[9] Plaintiff must also show that the discrimination alleged was because of his status in his protected class. *Id.*

---

[9] Defendant concedes the first and second elements of Plaintiff's prima facie case for discrimination under the *McDonnell Douglas Corp.* burden shifting standard. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Defendant only addresses the third and fourth elements of a *prima facie* case. Def.'s Mem. in Supp. of Mot. 14.

6

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)).

Plaintiff has not proffered direct evidence of discrimination and must operate by establishing his *prima facie* case of discrimination under Title VII. *Coleman*, 626 F.3d at 190. Under *McDonnell Douglas Corp.*, Plaintiff must first establish his *prima facie* case for discrimination, the burden will then shift to the employer to show a legitimate nondiscriminatory reason for the employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802–03. If Defendant provides a legitimate, non-discriminatory reason for the alleged disparate treatment, the burden shifts back to Plaintiff to show that "the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination." *Westmore v. TWC Administration LLC*, 924 F.3d 718, 726 (4th Cir. 2019). "The ultimate burden of persuading the trier of fact" remains with the employee "at all times." *Id.*

In this case, Plaintiff has utterly failed to provide a basis to oppose Defendant's Motion. There is no record support for either direct evidence of discrimination or proof by the burden shifting paradigm under *McDonnell Douglas Corp.* Plaintiff fails to rise to the challenge of Defendant's Motion despite the Court extending the time for filing a response. Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of the materials in the record . . . showing that the materials cited do not establish the absence or presence of a genuine dispute."). Due to the absence of any basis to dispute the facts as stated by Defendant, the Court finds there are no genuine disputes of the facts.

7

### a. Plaintiff Fails to Provide Sufficient Evidence Demonstrating Adverse Employment Action Taken by Defendant

Defendant avers that the reassignment to a "new role with new responsibilities (temporary or permanent) did not constitute adverse employment action where employee's pay, benefits, job title, responsibilities, and other fundamental terms of employment are not affected." Def.'s Mem. in Supp. of Mot. 14. Defendant argues that Plaintiff cannot satisfy the requirements of his *prima facie* case for discrimination because he has not offered any evidence showing that pay, grade, salary, benefits, and responsibilities were affected by his varying post assignments. *Id*. at 17. Plaintiff failed to file an opposition to Defendant's Motion.

In a claim for discrimination, adverse action is defined as an action that significantly changes "employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . . ." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Reassignment can form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect. *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). However, an assignment to a new role with new responsibilities does not constitute adverse employment action where the employee's pay, benefits, job title, responsibilities and other fundamental terms of employment are not affected. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004). A change in working conditions may be a factor to consider when assessing whether a reassignment qualifies as an adverse employment action that could give rise to Title VII liability. *Id*.

The general responsibilities of a Corporal are outlined as follows: "maintain discipline and order and reduce the risk of escapes, assaults, suicides, and injures by enforcing institutional rules and procedures . . . ." Class Specification 337. Plaintiff complains of being reassigned to

positions that he believes were more stressful. Def.'s Mem. in Supp. of Mot. 6. However, the posts Plaintiff was assigned to were part of the normal duties a Corporal is required to perform. *See e.g.* ECF No. 29–9 (CIU MC2505, Traffic Officer MC03894, North West Corridor MC 03897, Segregation 04956, Housing Escort MC 03005, W.1.2 MC 03025, W.1.3 MC 03007, W.1.4 03305, W.1.5 MC 03051, Visiting Desk MC 03019, Medical MC 03032, W.2.1 MC 03037, W.2.3 (JAS) MC 06006, W.2.5 MC 03043, N. Cluster Support II MC 03054, Inmate Processing MC 03064, Perimeter Security MC 5400).[10] The Court finds that there is nothing in the record which demonstrates that these positions required Plaintiff to perform duties that were outside of his normal duties as Corporal. Moreover, there is nothing in the record which demonstrates that Plaintiff's pay, grade, benefits and responsibilities were affected by his assignment to varying posts. *James*, 368 F.3d at 378.

A Corporal is responsible for the direct custody, care, and safety to a group of inmates/arrestees. Class Specification 336. There is nothing in the record which shows that the positions Plaintiff complains of demand more from him other than "direct custody, care, and safety to a group of inmates/arrestees." Plaintiff fails to provide any record evidence that there was something unique or adverse about the day to day responsibilities required of Plaintiff in the roles he was assigned.

Lastly, Plaintiff baldly asserts that "the Male Segregation Unit is hazardous to an officer's physical, mental and emotional health." Compl. ¶ 12. However, there is no evidence to show that the experience with this post diverges from the responsibilities of a Corporal. As stated by Plaintiff, "when you walk into a correctional facility, it's – once you step through the door, it's very risky. So you always have a level or risk that you're going to experience." Young

---

[10] For clarity, the Bates numbers were provided to easily pinpoint the positions held by Plaintiff.

Dep. 39:24–40:2. It may be true that a position within this post is more stressful and carries a slightly higher degree of risk, however, certain occupations are expected to have a heightened degree of risk. *See Peary v. Gross*, 365 F. Supp. 2d 713, 724 (E.D. Va. 2005) ("While every form of employment carries some risk, certain occupations – *e.g.*, fireman, policeman, CIA operations officer – carry a degree and type of risk quite unlike that found in the more commonplace work environments . . . ."). "Thus, in certain contexts, reassignment to a position carrying a greater degree of risk that the employee has already agreed to tolerate – and, importantly, has been trained to tolerate – is merely a foreseeable stage in the progression the employee's career, not an adverse employment action." *Id.* at 724. As such, the Court finds that Plaintiff failed to support the assertion that the alleged heightened risk and stress experienced from the Male Segregation Unit constitutes adverse action.

### b. Plaintiff Has Not Demonstrated That He Was Subjected to Disparate Treatment Due to His Race.

Defendant avers that there is no evidence that Plaintiff was treated differently than other similarly situated employees. Def.'s Mem. in Supp. 18. Defendant contends that there is no inference of disparate treatment based on race. *Id.* at 19. According to Defendant, positions which Plaintiff believes should be evenly distributed between white and non-white employees, are in fact distributed as such since "African-Americans and other non-White employees have been and continue to be assigned to JAS.[11]" *Id.* at 20. Moreover, Defendant contends that Corporal Spickler, and Sergeant Ryder cannot be considered to have been treated more favorably than Plaintiff and are not legitimate comparators. *Id.*

---

[11] The JAS is one of the posts Plaintiff prefers and believes should be evenly distributed. Young Dep. 98:4–8.

To demonstrate disparate treatment, Plaintiff must be able to show that similarly situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). "[P]laintiff must identify a 'comparator,' *i.e.*, someone who is 'similarly situated' to the plaintiff" and was treated differently. *Hoffman v. Baltimore Police Dep't,* No. WMN-04-3072, 2009 WL 167144, at *17 (D. Md. Jan. 21, 2009). Notably:

> The similarly situated inquiry is a flexible one that considers all relevant factors . . . but the fundamental issue remains whether such distinctions are so significant that they render the comparison effectively useless. In other words, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other *prima facie* evidence, would allow a jury to reach an inference of discrimination or retaliation—recall that the plaintiff need not prove anything at this stage.

*Id.*

In this case, Plaintiff avers that Corporal Spickler and Sergeant Ryder were constantly assigned to the same posts and received favorable treatment. Young Dep. 98:18, 103:9–16. However, there are factors that make them invalid comparators. First, both Corporal Spickler and Sergeant Ryder have specialized training for the CIU unit, whereas Plaintiff does not. Young Dep. 98:21–99:18, 103:13–104:17. Second, Sergeant Ryder held a rank of Sergeant whereas Plaintiff held the rank of Corporal, which have different requirements. Moreover, assuming *arguendo* that Corporal Spickler and Sergeant Ryder were valid comparators, Plaintiff himself admits that Corporal Spickler and Sergeant Ryder regularly worked in CIU, which Plaintiff characterizes as higher risk, and therefore negating his contention that white employees get favorable treatment. Young Dep. 100:5–101:2, 103:20.

11

Plaintiff also contends that Corporal Zelbo was treated favorably due to his race on the day of the discriminatory event (June 13, 2016), because Corporal Zelbo was asked to replace Plaintiff in the W.1.H. Escort Relief Post. Young Dep. 71:6–12, 105:20–106:2. However, the Court finds that Corporal Zelbo, despite having the same rank as Plaintiff, is not a valid comparator because Corporal Zelbo has specialized training as part of the Emergency Response Team, whereas Plaintiff does not. Beam Aff. ¶ 9; Young Dep. 83:14–84:6.

All in all, the Court finds that Plaintiff has failed to provide sufficient evidence to demonstrate disparate treatment due to his race. Plaintiff's threadbare allegation that the June 13, 2016 reassignment was due to his race is insufficient. *See Coleman*, 626 F.3d at 191 (conclusory allegations of racial discrimination fail "to establish a plausible basis for believing [two white co-workers] were actually similarly situated or that race was the true basis for [the plaintiff's] termination"); *Prince-Garrison v. Md. Dep't of Health & Mental Hygiene,* 526 F. Supp. 2d 550, 555 (D. Md. 2007) (bald conclusions and assertions of negative treatment in the workplace are "simply insufficient for properly alleging a cause of action under Title VII."). Without more evidence, the Court cannot find that Plaintiff was treated unfairly due to his race. Plaintiff has been and continues to be assigned and rotated to a variety of posts within the MCCF. *See e.g.*, ECF No. 29–2 (CIU MC2505, Traffic Officer MC03894, North West Corridor MC 03897, Segregation 04956, Housing Escort MC 03005, W.1.2 MC 03025, W.1.3 MC 03007, W.1.4 03305, W.1.5 MC 03051, Visiting Desk MC 03019, Medical MC 03032, W.2.1 MC 03037, W.2.3 (JAS) MC 06006, W.2.5 MC 03043, N. Cluster Support II MC 03054, Inmate Processing MC 03064, Perimeter Security MC 5400). There is nothing within a Corporal's job description or anything else provided to the Court on this record which entitles Plaintiff to his

preferred posts. Hence, Plaintiff fails to meet his burden to show he was treated differently based on his race.

Plaintiff has failed to establish a *prima facie* case of discrimination on the basis of race; therefore, the Court need not discuss whether Defendant can show a legitimate nondiscriminatory reason for the employment action because the burden did not shift. *McDonnell Douglas Corp.*, 411 U.S. at 802–03.

### IV.     Conclusion

For the reasons set forth above, Defendant's Motion is GRANTED, and the case shall be dismissed with prejudice.

September 14, 2020                                                                              /s/
                                                                                   Charles B. Day
                                                                                   United States Magistrate Judge

CBD/hjd